NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

```
_____      :
                                  :
MICHAEL ANSARO BURPEE-EL,         :        Civil No. 10-2200 (JBS)
                                  :
            Petitioner,           :
                                  :
       v.                         :              OPINION
                                  :
WARDEN, FORT DIX,                 :
                                  :
            Respondent.           :
_____      :
```

**Simandle**, District Judge:

　　This matter comes before this Court upon an application (submitted by the litigant who signed it as "Michael Ansaro Burpee-El" ("Burpee-El")), which was docketed by the Clerk as a petition executed pursuant to 28 U.S.C. § 2241 ("Petition").  See Docket Entry No. 1.  Originally, Burpee-El submitted his application to the United States District Court for the Middle District of Florida ("M.D. Fla.").[1]  See Docket Entries Nos. 2 and 3.  Upon examination of Burpee-El's submission (the content of which is detailed infra), Judge Anne C. Conway of the U.S. District Court for the Middle District of Florida ("M.D. Fla."):  (a) concluded that Burpee-El, being currently confined at the F.C.I. Fort Dix, Fort Dix, New Jersey, is most likely to be challenging

_____

　　[1]  Since Burpee-El alleged that he accompanied his application by the filing fee of $5.00, see Docket Entry No. 1, at 1, this Court presumes that the Clerk of the Court for M.D. Fla. duly collected the funds.

the execution of his criminal sentence by the Bureau of Prisons ("BOP"), in general, and by the prison officials at the Fort Dix, in particular; and, hence, (b) directed transfer of Burpee-El's instant submission to this District.

The Clerk of this Court received the transfer on May 3, 2010. See Docket Entry No. 3.  For the reasons detailed below, this Court will dismiss Burpee-El's submission, as drafted, but will allow Burpee-El an opportunity to submit a *properly executed petition* complying with the requirements posed by Section 2241 and Habeas Rule 2, as well as with the applicable exhaustion requirement.

I.   **BACKGROUND AND PROCEDURAL HISTORY**

   A.   **Burpee-El's Criminal Proceedings Underlying His Current Incarceration**

Transferred from the M.D. Fla., the instant matter provides only Burpee-El's two-page statement and his civil cover page.  See Docket Entry No. 1.  However, this Court's research revealed the record of Burpee-El's criminal proceedings (underlying his current confinement); the content of those proceedings and Burpee-El's litigation tactics during them appear highly relevant to the case at bar.  On June 3, 2003, a criminal complaint was filed in the M.D. Fla. naming three persons as defendants, with Burpee-El -- who was known back then as "Michael Burpee" (without the suffix "El") -- being one of these defendants.  See USA v. Burpee, et al. ("Burpee"), Crim. Action No. 03-00215 (SCB) (M.D. Fla., indictment unsealed on June 4, 2003), Docket Entry No. 1.  The government

2

complaint charged Burpee-El with numerous offenses that could be summarized as manufacture, possession and sale of a controlled substance (phencyclidine), as well as conspiracy to commit the aforesaid criminal acts.  See Burpee, Docket and Docket Entry No. 1.  Burpee-El and two co-defendants were denied bail and entered the custody of federal authorities.  See id., Docket Entry No. 28. On July 1, 2003, Charles S. Calandra, Esq., an attorney in private practice, was retained by Burpee-El and substituted the already-appointed public defender, Dionja L. Dyer, as Burpee-El's counsel. See id., Docket Entries Nos. 33 and 40.  Upon the government's filing of its first and then second superceding indictments in September and December of 2003, see id., Docket Entries Nos. 43 and 77 (the superceding indictments increased the ring of co-conspirators from three to six, and arrests of three other co-conspirators followed, adding them to the list of Burpee-El's co-defendants), Judge Susan C. Bucklew, presiding over the prosecution of Burpee-El and his – by then five – co-defendants, entered an order, dated February 18, 2004, placing Burpee-El's trial on her calendar for March 22, 2004.  See id., Docket Entry No. 111.  Four days later, Burpee-El entered a plea agreement (which included a waiver of Burpee-El's right to appeal).  See id., Docket Entry No. 114.  On March 16, 2004, Burpee-El's plea hearing was held, see id., Docket Entry No. 148, and the plea was accepted by Judge Bucklew on April 5, 2004.  See id., Docket Entry No. 150.  However, in June of 2004, Burpee-El filed, seemingly on his own volition and

3

without assistance of counsel, two motions titled "Motion for
Request for Understanding." See id., Docket Entries Nos. 159 and
160.  These submissions were followed by Burpee-El's oral motions
made to Judge Bucklew in open court seeking dismissal of Burpee-
El's defense attorney, Mr. Calandra, dismissal of the Assistant
United States Attorney prosecuting Burpee-El's criminal charges
and, in addition, dismissal of all criminal charges against Burpee-
El on grounds that included, inter alia, lack of jurisdiction on
the part of Judge Bucklew (and the M.D. Fla., in general).  See id.
Docket Entry No. 163.  That development caused Judge Bucklew to
direct Burpee-El's examination by a psychiatrist.  See id.  Burpee-
El's requests for dismissal of his prosecutor, his criminal charges
and for "understanding" were denied, but his private counsel was
substituted by a CJA attorney.  See id., Docket Entries Nos. 163
and 228.

   Burpee-El, meanwhile, filed another document, again on his own
volition; that document informed Judge Bucklew that Burpee-El was
refusing to accept his conviction and upcoming sentence because
they were "fraudulently" obtained by Judge Bucklew and Burpee-El's
prosecutor.  See id., Docket Entry No. 165 (reflecting the filing
of "Refusal for Fraud").  In response, Judge Bucklew appointed Dr.
Donald R. Taylor to examine Burpee-El.  See  id., Docket Entry No.
167.  Upon having Burpee-El examined by a psychiatrist and
satisfying herself as to Burpee-El's mental capacity, see id.,
Docket Entries Nos. 182,183 and 215, Judge Bucklew: (a) dismissed

4

another set of Burpee-El's motions that were filed in the interim,
see id., Docket Entries Nos. 182-188 and 195 (dismissing, inter
alia, Burpee-El's motion for immediate release from custody on the
grounds of the prosecutors and prison officials' lacking subject
matter and in personam jurisdictions over Burpee-El's body); and
(b) sentenced Burpee-El to 324 months of imprisonment and 60 months
of supervised release upon release.  See id., Docket Entries Nos.
204, 205 and 218.  Upon being so sentenced, Burpee-El orally moved
before Judge Bucklew for a writ of habeas corpus, raising the
grounds already dismissed by Judge Bucklew; that motion was denied.
See id., docket Entries Nos. 210 and 211.  In response, Burpee-El
filed "Motion for Proof Power, Standing, and Jurisdiction in the
Particulars," plus substantively identical to that motion "Notice
of Default," "Motion to Vacate Void Judgment," "Declaration of
Objection to Sentencing in the Nature of Writ of Error" and "Motion
to Dismiss for Lack of in Personam and Subject Matter
Jurisdiction," see id., Docket Entries No. 233, 237, 239, 240, 260
and 262, where each of these submissions was a voluminous set of
documents reading, for example, as follows:

> I, Michael Ansaro Burpee-El, In propria Persona, sui
> juris, I am a follower of Noble Drew Ali and Isa in the
> Arabic, Jesus the Christ in the Greek, Yehoshua the
> Hebrew, the Messiah in the Laws of the Almighty Supreme
> Creator, Allah first and foremost and the laws of man
> when they are not in conflict (Leviticus 18: 3,4).
> Pursuant to Matthew 5:33-37 and Janus 5:12, let my yea be
> yea, and my nay be nay, as supported by federal Public
> Law 97-280, 96 Stat. 1211.  I have personal knowledge of
> the matters stated herein, and hereby asseverate
> understanding the liabilities presented in Briscoe v.
> Lahue 460 US 325.  By the grace of the Great God and

5

blood of My forefathers, I am a freeborn Moorish-American
Sovereign. The fact I can prove that I am, through wisdom
and knowledge of history, is not nearly as great as
knowing there are no European de facto government(s),
courts, nor employees thereof, existing of color of law,
which can prove I am not!  To say the least, I am
definitely not what they say I am.  They said that in
1779, Negro, Black and Colored, declared as 3/5 of a
person, are slave names given to slaves by European slave
masters.  Then in 1865 the Great 13th Amendment of the
U.S. Constitution abolished the institution of slavery
e.g. slaves, slave masters, slave names (Negro, Black,
Colored, etc.).  Yet these slave marks are still used
today in a deceitful system of denationalization
(reference local, state, federal identification records,
National Crime Information center (NCIC), etc.). Although
there are millions of "proud Black People" in the U.S.
today, the carnal customs of man do not alter the nature
of truth.  This status of being My Own Proper Person is
too great to be told in words and there is bliss of Peace
found in Freedom with knowledge of Self.  "The United
States Attorney is the representative not of an ordinary
party to a controversy, but of a sovereignty whose
obligation to govern impartially is as compelling as its
obligation to govern at all; and whose interest,
therefore, in a criminal prosecution is not that it shall
win a case, but that justice shall be done.  As such, he
is in a peculiar and very definite sense the servant of
the law, the twofold aim of which is that guilt shall not
escape or innocence suffer.  He may prosecute with
earnestness and vigor - indeed, he should do so.  But,
while he may strike hard blows, he is not at liberty to
strike foul ones.  It is as much his duty to refrain from
improper methods calculated to produce a wrongful
conviction as it is to use every legitimate means to
bring about a just one." Berger v. U.S. 295 U.S. 78, 88
(1935).  As an attorney, it was my mandate to fight
against authority when it was overbearing, abusive, or
unjust, but also to respect and believe in the system.
When I challenged the system it was not from disrespect;
rather it was the ultimate form of respect. "I understood
then, as I do today, that absent challenge, authority
becomes totalitarian.  Authority needs to be challenged
if we are to ensure the integrity of the process.  It is
one of the great truths of our system."  Judge Harold J.
Rothwax.
In this case, foul blows have been struck and absent
addressing My challenge, authority becomes totalitarian,
wherefore I timely present My good faith IN THE NATURE OF
MOTION TO DISMISS FOR LACK OF IN PERSONAM AND SUBJECT-

MATTER JURISDICTION OF Michael Ansaro Burpee-El.  This court will take judicial notice that I hold the utmost respect for the courts of this state and of this nation; however, I do distinguish between the court and an officer of the court and as to the latter, neither my respect nor my contempt is given freely, it must be earned.  I have witnesses, evidence and testimony in an offer of proof that a) Officers of the court, U.S. government and Jeffrey S. Downing doing business as assistant U.S. attorney has never proved alleged jurisdiction. b) Officers of the court are prosecuting a case of Mistaken Identity. c) Officers of the court are withholding exculpatory evidence to facilitate said prosecution. d) Officers of the court never sustained In Personam and Subject-Matter Jurisdiction when challenged. e) Officers of the court had prior knowledge of the use of unconstitutional slave labels Negro, Black, Colored, African-American, yet moved forward. This is in dire violation of International Law, U.S. Constitution Article I section 9 clause 3 and section 10 and Treaty, U.S. Supreme Court Authority, U.S. code and court rules.  I have witnesses, evidence and testimony in an offer of proof that court officers Charles Calandra [who was Burpee-El's privately hired defense counsel] and Jeffrey Downing approached [Burpee-El]' s wife on or about July 8, 2004 with an offer of three (3) years of imprisonment for the exchange of [Burpee-El]' s ceasing his challenge of the Courts jurisdiction, further coercing [Burpee-El] into hearings and or negotiations.  I have witnesses, evidence and testimony in an offer of proof that this may be dismissed when the law provides that once jurisdiction of a court is challenged, it, The Court, must investigate the authenticity of the status and jurisdiction in question before it can proceed. This forces the court "In Personam" Jurisdiction, where it must prove it has the power over the personage of the accused (not "quasi in rem"; power over property) see Pennoyer v. Neff, 95 U.S. 714, 24 Led 565.  I have witnesses, evidence and testimony in an offer of proof that Michael Ansaro Burpee-El has only responded to this case because it was filed by the United States Attorneys office, U.S. Attorney Paul I. Perez, asst. U.S. Attorney Jeffrey S. Downing, along with alleged defense attorney(s), using local, state, and federal "Police identification records" without My consent, nor understanding and attempts to create a colorable persona under colorable law by applying ex post facto, unconstitutional slave labels Negro, Black, Colored, African-American, etc., and the name in capital letters MICHAEL A. BURPEE, the artifice being used here to deceive this Honorable Court, must be

abated as a Public Nuisance and Michael Ansaro Burpee-El
release from custody immediately.  . . .[2]

Id., Docket Entry No. 262, at 1-4 (capitalization in original;

bolding, original brackets and unpaired quotation marks removed).[3]

These motions were denied by Judge Bucklew.  See id., Docket

Entries Nos. 235, 241, 249, 252, 255, 263.  As of now, Burpee-El's

appeal is pending before the Court of Appeals for the Eleventh

Circuit, see id., Docket Entry No. 264; the Eleventh Circuit denied

all Burpee-El's previous appellate applications.  See id., Docket

Entries Nos. 258 and 259.

The sentence imposed by Judge Bucklew appears to be the one

underlying Burpee-El's current incarceration.  However, the

prosecution before Judge Bucklew was not the sole criminal

proceeding conducted against Burpee-El in 2004: the Court's

research from the public dockets revealed that another criminal

proceeding was instituted against Burpee-El in the United States

District Court for the District of Maryland ("Maryland").  See USA

v. Burpee, et al. ("Burpee-Maryland"), Crim. Action No. 03-420

(AMD) (D. Md.) (indictment unsealed on Mar. 3, 2004), in which

---

[2]  The excerpt replicates only three pages of Burpee-El's
13-page submission.

[3] Similar inflammatory and bizarre pleadings and litigation
strategies have emerged in other cases, for example, Monroe v.
Beard, 536 F.3d 198 (3d Cir. 2008), and Marrakush Soc'y v. N.J.
State Police, 2009 U.S. Dist. LEXIS (D.N.J. July 30, 2009), as
discussed further below.

Burpee-El was held in contempt of court.[4]

_____

[4] During his arraignment in Maryland, Burpee-El entered the plea of "not guilty" and accompanied his plea by the conduct and statements that prompted Judge James K. Bredar (presiding over Burpee-El's arraignment) to hold Burpee-El in contempt of court. See Burpee-Maryland, Docket Entry No. 8.  Burpee-El's federal public defender (appointed for the purposes of Burpee-El's Maryland proceedings) moved Judge Bredar for reconsideration; that application was denied.  See id. Docket Entries Nos. 11 and 12.

Then Burpee-El filed, apparently on his own volition and without assistance of his Maryland counsel, a familiar string of applications titled "Refusal for Fraud," "Motion for Request for Understanding," "Affidavit of Truth as to Non-Consent Attached to as Incorporated," etc.  See id., Docket Entries Nos. 14 to 17; see also, id., Docket Entries Nos. 28 and 29 (reflecting, inter alia, a motion for withdrawal filed by the public defender appointed to represent Burpee-El in Maryland, and grant of that motion by Judge Andre M. Davis).

Apparently, similar to his M.D. Fla. proceedings (and same as was done by the litigants whose claims this Court addressed in Estate of Casimir v. New Jersey, 2009 U.S. Dist. LEXIS 78113, and Marrakush Soc'y, 2009 U.S. Dist. LEXIS 68057), Burpee-El asserted that his Maryland criminal proceedings were conducted without proper jurisdiction and, in addition, that Burpee-El stopped being the same human entity as Michael Burpee.  That assertion, in turn, caused the District of Maryland to conduct: (a) Burpee-El's identity hearing, see id., Docket Entries Nos. 18, 19 and 20 (during which Burpee-El moved for suppression of his photo identification and his in-court identification); and (b) a court-directed psychiatric evaluation of Burpee-El.  See id., Docket Entry No. 27.  The identity hearing and psychiatric evaluation triggered another string of motions from Burpee-El, e.g., "Notice and Demand to Dismiss for Lack of any Criminal Jurisdiction Whatsoever," "Notice and Demand for Proof of Power, Standing and Jurisdiction in the Particulars," "Motion to Dismiss for Lack of Territorial Jurisdiction Attached to as Incorporated Herein," "Refusal for Fraud and Affidavit of Truth with Undisputed Facts," "Demand of Release" and "Affidavit of Parties Agents, Agencies Acquiesce, Admission and Confession to Unrebutted Facts," see id., Docket Entries Nos. 33 to 38, and 40 to 46, as well as Burpee-El's application for dismissal of his CJA attorney appointed to represent him in place of Burpee-El's by-then-dismissed public defender.  See id., Docket Entries No. 39 and 44 ("Notice and Affidavit of Firing of Attorney-At-Law Esquire(s) for Fraud and Collusion" and "Affidavit of Refusal of

### B.    Pattern of Frivolous or Obstructive Pleadings

Petitioner Burpee-El's submissions in this case and pertaining to his conviction in the Middle District of Florida have many of the unique indicia of other frivolous submissions received in this and other federal courts.  During 2009, a number of federal district courts, this District included, experienced an influx of civil cases initiated by a group of litigants (or related sub-groups of litigants) seemingly attempting to advance similar positions through initiation of litigations marked by similar litigation techniques.  See Marrakush Soc'y v. N.J. State Police, 2009 U.S. Dist. LEXIS 68057, at *21-25 (D.N.J. July 30, 2009) (listing twenty seven actions initiated in this District, as well as with the District of Delaware, the Southern District of Florida and the Eastern District of New York).  All these actions were dismissed, on various grounds, by the aforesaid federal courts, this Court included.  See id. at 26-146.

The pleadings filed in those proceedings, and this one, share the characteristic of the litigants' addition of a suffix (either the suffix "El" or "Bey," or both) to their last names, regardless of whether these last names were officially given or assumed.[5]

_____

the Attorney on the Grounds that the Attorney Refused to Defend").  Having dismissed Burpee-El's criminal charges, see id., Docket Entry No. 48; Maryland flatly declined to respond to the string of correspondences that Burpee-El kept filing with Maryland regardless of the conclusion of his proceedings.  See id., Docket Entry Nos. 49-51.

[5] Id. at *4, 11, nn. 1 and 6 (quoting Bey v. Lane, 863 F.2d 1308, 1309 (7th Cir. 1998)) (original brackets removed).

This court is unaware whether Petitioner Burpee-El has officially changed his name when he adopted the suffix "El."

Frequently asserting that they renounced their United States citizenship, these litigants habitually maintained that the United States government (as it exists in the form of administrative or law enforcement agencies) had no jurisdiction over these litigants. See, e.g., id. at *51-52, 72-75 and nn. 31 and 38 (providing examples of the litigants' frictions with law enforcement officials).[6]   Typically, these litigants claimed they were merely "inheritors" of the physical bodies of the very people whom they actually "had been" before assuming their present identities.[7] See, e.g., Estate of Casimir v. New Jersey, 2009 U.S. Dist. LEXIS

---

[6]   While -- in actuality -- these litigants did indeed reside in various parts of the United States, they habitually created fictitious names for the places of their residence; such names were usually composed of a string of imaginary principalities and territories; these imaginary terms were typically derived from ancient or tribal names of actual geographic locales and accompanied by distorted foreign words, usually borrowed from either modern or archaic Arabic.  See Marrakush Soc'y, 2009 U.S. Dist. LEXIS 68057, at *7, 13, 27, 43, 74-75 and nn. 4, 5, 15, 26.  Having no ability to convey the actual geographic locations of these imaginary political subdivisions, these litigants often employed a concoction of Earth coordinates (altered, occasionally, by utilization of the Hobo-Dyer Equal Area Projection) and designated these "lands" as"Aboriginal and Indigenous lands," referring to the populous of these lands as "Aboriginal" persons.  See id. at *19, 29, 35, 29-32, 38, 56 and nn. 12, 31, 33.

[7]   Burpee-El likewise claims he is "a flesh and blood Moorish-American national sojourning in Florida state near 510 Bahia Trail, Ocala, Florida" and that he is confined "under the fictitional name of Michael Ansaro Burpee."  (Docket Item 4 at p. 3, ¶¶ 2 & 3.)

11

78113, at *6 and n.4 (D.N.J. Aug. 31, 2009).  With striking
uniformity, these litigants asserted that the United States
government and its officials prosecuted, arrested, or imprisoned
these litigants without having due subject matter and/or in
personam jurisdiction.  See id.; see also Marrakush Soc'y, 2009
U.S. Dist. LEXIS 68057.  In light of the foregoing, it is hardly
surprising that government officials, be they law enforcement
officers, prosecutors, public defenders or members of the
judiciary, experienced uncertainty as to these litigants' mental
capacity, as Burpee-El experienced in his Florida and Maryland
cases.  See generally, Marrakush Soc'y, 2009 U.S. Dist. LEXIS 68057
(providing numerous examples).  However, while the mode of
interactions employed by these litigants overstepped the bounds of
mere creativity, it appears that these litigants operated in a
calculated fashion and with full mental capacity.  See id. at *98-
99, n. 48 (quoting Monroe v. Beard, 536 F.3d 198, 203 and nn. 3 and
4 (3d Cir. 2008)), where the Court of Appeals detailed a complex
criminal scheme based on practices analogous to those employed by
the litigants whose legal actions were examined by this Court in
Marrakush Soc'y, 2009 U.S. Dist. LEXIS 68057; the practices
described by the Court of Appeals envisioned abuse of legal process
for the purposes of intentionally injuring prison/government
officials through frivolous suits).  In addressing such matters,
the courts have declined to apply the imaginary body of law that
the petitioners propose.  This is such a case, as next discussed.

12

## C.   Burpee-El's Application Pending Before This Court

As noted _supra_, Burpee-El's instant application consists of a pre-printed civil cover sheet and a two-page letter, _see_ Instant Matter, Docket Entry No. 1; the letter, in its entirety, reads as follows:

> Dear Clerk of Court,
> Chief Circuit Judge Scirica, has been named as the government official of the judicial branch of government in and for this court, and has power to grant issue the Writ of Habeas Corpus Ad Subjiciendum as it existed in 1789 pursuant to 28 USC 2241. (reference INS v. St. Cyr 533 U.S. 289, 301(2001))  Enclosed you will find a Civil Cover sheet signed and dated, a Process Receipt and Return form signed and dated as to Warden Donna Zickefoose-Federal Correctional Institution Fort Dix, Jeffrey S. Downing d.b.a. U.S. assistant Attorney for the Middle District of Florida, the U.S. Attorney for the District of New Jersey, and the Attorney General of the United States. Also there is a Notice of Lawsuit and Waiver of Service of Summons forms to each named above; attached to as incorporated herein.  Additionally, this package includes a Petition for the Writ of Habeas Corpus Ad Subjiciendum as it existed in 1789 for the unlawful seizure and detention of Petitioner by the Executive Branch, signed and dated before a New Jersey Notary, the Writ of Habeas Corpus Ad Subjiciendum as it existed in 1789 and interrogatories and expressly noted that it is not a 2254, 2242, 2255, nor 60(b) nor any other statutory motion created by Congress in substitution to the Great Writ as it existed in 1789.  Finally, there is also a check enclosed in the amount of $5.00 made payable to the Clerk of Court for the Court of Appeals of United States for the Third Circuit.  As for the above, please file with the Court and notify the undersigned of the case number on file and any relevant procedures taking place. Moreover, I appreciate your time and attention as I await your reply. Michael Ansaro Burpee-El Per His Consent[.]

_Id._ at 1-2 (punctuation as in original); a fingerprint is affixed to the letter with a clarification that it is intended to operate as Burpee-El's "seal." _See id._ at 2.  However, contrary to the assertion in the above-quoted letter, no "Petition for the Writ of

13

Habeas Corpus" is included in Burpee-El's submission.  See
generally, Docket Entry No. 1.

As discussed above, Burpee-El's submission currently before
this Court bears many of the marks distinguishing the submissions
examined by this Court in Marrakush Soc'y, 2009 U.S. Dist. LEXIS
68057, supra.  Moreover, in light of the content of Burpee-El's
motions filed with the M.D. Fla. and Maryland during Burpee-El's
criminal proceedings, the content of the instant submission does
not appear accidental but – on the contrary – seems to be
representative of the litigation strategy employed by Burpee-El in
other federal courts.  Out of abundance of caution, this Court
finds it prudent to give Burpee-El the benefit of the doubt and,
hence, will clarify to Burpee-El the pertinent legal standards and
will allow Burpee-El one opportunity to submit *a valid petition for
a writ of habeas corpus* under the governing legal standards.


II.  **STATUTORY PROVISION AVAILABLE TO BURPEE-EL IN THIS ACTION**

Jurisdiction to issue a writ of habeas corpus is lawful power
to order an official to certify the cause of a detention and, if
necessary, to present the detainee to the court.  Petitioner
invokes the Judiciary Act of 1789 as the basis for relief.  That
statute, subsequently amended and superceded, is inapplicable to
this case for several reasons, now discussed.   The Fourteenth
Section of the Judiciary Act of 1789 (that is, the statute which,
this Court presumes, Burpee-El defines as the source of the "power

14

to grant issue the Writ of Habeas Corpus Ad Subjiciendum as it existed in 1789") provided that all courts of the United States should "have power to issue writs of scire facias, habeas corpus, and all other writs not specially provided for by statute, which may be necessary for the exercise of their respective jurisdiction, and agreeable to the principles and usages of law."  1 Stat. 73, at 81-82.  Although the Act of 1789 left the power over writs subject largely to the common law, the Act was significant as a reflection of the belief, in which the courts have on the whole concurred, that an act of Congress was necessary to confer judicial power to issue writs.  See id.; see also United States v. Morgan, 346 U.S. 502 (1954) (holding that the All Writs section of the Judicial Code, 28 U.S.C. § 1651(a) is the provision that actually gives federal courts the power to employ the writ of coram nobis).

The Act of 1789, as the source of judicial power, was superceded by the Judiciary Act of February 5, 1867, 14 Stat. 385. See Anthony G. Amsterdam, Criminal Prosecutions Affecting Federally Guaranteed Civil Rights: Federal Removal and Habeas Corpus Jurisdiction to Abort State Court Trial, 113 U. PA. L. REV. 793, 819-25 (1965); see also William M. Wiecek, The Great Writ and Reconstruction: The Habeas Corpus Act of 1867, 36 J.S. Hist. 530 (1970).  The Judiciary Act of 1867 was eventually superceded by the currently operating federal habeas corpus statutes codified as Sections 2241 to 2255 of Title 28.  See 28 U.S.C. §§ 2241-2255 (1994 & Supp. III 1997).  See id.  As of now, only Section 2241,

15

enacted in 1940, applies to federal inmates, like Burpee-El, for

the purposes of their challenges based on execution of their

sentences.  In other words, all preceding relevant enactments

(including the Judiciary Act of 1789) were superceded in their

entirety by -- and stopped being the source of judiciary power as a

result of enactment of -- Section 2241.

> [This, rather axiomatic,] principle [was] expressed in
> Daviess v. Fairbairn, 3 Howard, 636, 643 (1845), as
> follows:] "If a subsequent statute be not repugnant in
> all of its provisions to a prior one, yet if the latter
> statute clearly intend to prescribe the only rule which
> shall govern, it repeals the prior one."

State v. Stoll, 84 U.S. 425, 431 (1873).  Consequently, to the

extent Burpee-El wishes to challenge the execution of his sentence

by the BOP officials, the jurisdictional basis available to him is

Section 2241, not the Act of 1789, and he must file a petition

complying with current requirements.[8]

---

[8]  If Burpee-El wishes to challenge his conviction and/or
sentence, this Court generally has no jurisdiction to entertain
such an application.  Accord Frazier-El v. Bureau of Prisons,
2010 U.S. App. LEXIS 8092 (3d Cir. N.J. Apr. 19, 2010) (affirming
this Court's decision that the Court lacked § 2241 jurisdiction
to entertain the claims a federal inmate who he challenged his
sentence on the ground that, as a Sheik in the Moorish Science
Temple, he was authorized to possess a firearm, and that the
federal district court which tried his criminal charges lacked
jurisdiction to convict him).  Rather, Burpee-El's remedy is a
Section 2255 motion to the M.D. Fla. (or, in the event he already
filed a § 2255 motion, a motion to the Eleventh Circuit seeking
leave to file a second/successive § 2255 application).  This
Court, however, stresses that no statement made in this Opinion
or in the accompanying Order shall be construed as expressing
this Court's position as to the procedural or substantive
validity (or invalidity) of any future § 2255 application (or his
application for leave to file a second/successive § 2255 motion),
if such is/was ever filed.

## A.    Proper Exhaustion of a Section 2241 Petition

At the outset, any claim in Burpee-El's § 2241 petition must be duly exhausted administratively.  Although 28 U.S.C. § 2241 contains no statutory exhaustion requirement, a federal prisoner ordinarily may not bring a petition for writ of habeas corpus under 28 U.S.C. § 2241, challenging the execution of his sentence, until he has exhausted all available administrative remedies.  See, e.g., Callwood v. Enos, 230 F.3d 627, 634, 43 V.I. 293 (3d Cir. 2000); Arias v. United States Parole Comm'n, 648 F.2d 196, 199 (3d Cir. 1981); Soyka v. Alldredge, 481 F.2d 303, 306 (3d Cir. 1973).  The exhaustion doctrine promotes a number of goals: (1) allowing the appropriate agency to develop a factual record and apply its expertise facilitates judicial review; (2) permitting agencies to grant the relief requested conserves judicial resources; and (3) providing agencies the opportunity to correct their own errors fosters administrative autonomy.  See Goldberg v. Beeler, 82 F. Supp.2d 302, 309 (D.N.J. 1999), aff'd, 248 F.3d 1130 (3d Cir. 2000); see also Moscato v. Federal Bureau of Prisons, 98 F.3d 757, 761 (3d Cir. 1996).

The BOP's Administrative Remedy Program is a three-tier process available to inmates confined in institutions operated by respondent who "seek formal review of an issue relating to any aspect of his/her confinement."  28 C.F.R. § 542.10(a).  An inmate must generally attempt to informally resolve the issue by presenting it to staff in a BP-8 form.  See 28 C.F.R. § 542.13.  If

17

the issue is not informally resolved, then the inmate may submit a request for administrative remedy (the BP-9 form) to his/her warden.  See 28 C.F.R. § 542.14.  An inmate who is dissatisfied with the warden's response may appeal to the Regional Director (utilizing the BP-10 form), and an inmate dissatisfied with the Regional Director's decision may appeal to the General Counsel in the Central Office (utilizing the BP-11 form).  See 28 C.F.R. § 542.15(a).  Appeal to the General Counsel is the final administrative appeal.  See id.  The regulations further provide that the warden shall respond within 20 calendar days; the Regional Director shall respond within 30 calendar days; and the General Counsel shall respond within 40 calendar days.  See 28 C.F.R. § 542.18.   In addition, the regulation provides that if the inmate does not receive a response within the time allotted for reply, then the inmate may consider the absence of a response to be a denial at that level.  See id.  Consequently, a § 2241 petition is deemed unexhausted unless the inmate did not have his application either expressly or constructively denied by the General Counsel.

### B.   Proper Content and Form of a Section 2241 Petition

In addition to raising only a claim upon which aailable administrative remedies have been properly exhausted, a habeas petition shall comply with applicable pleading and format/content requirements.

"Habeas corpus petitions must meet heightened pleading requirements."  McFarland v. Scott, 512 U.S. 849, 856 (1994).

18

Habeas Rule 2(c) requires a habeas petition to "specify all the grounds for relief available to the petitioner," "state the facts supporting each ground," "state the relief requested," be printed, typewritten, or legibly handwritten, and be signed under penalty of perjury.  28 U.S.C. § 2254 Rule 2(c) (applicable to § 2241 petitions through Habeas Rule 1(b)).

Habeas Rule 4 requires a judge to <u>sua</u> <u>sponte</u> dismiss a habeas petition without ordering a responsive pleading "[i]f it plainly appears from the petition and any attached exhibits that the petitioner is not entitled to relief in the district court."  28 U.S.C. § 2254 Rule 4 (applicable to § 2241 petitions through Habeas Rule 1(b)).  Thus, "[f]ederal courts are authorized to dismiss summarily any habeas petition that appears legally insufficient on its face."  <u>McFarland</u>, 512 U.S. at 856.  Dismissal without directing an answer has been found warranted when "it appears on the face of the petition that petitioner is not entitled to [habeas] relief."  <u>Siers v. Ryan</u>, 773 F.2d 37, 45 (3d Cir. 1985), <u>cert.</u> <u>denied</u>, 490 U.S. 1025 (1989); <u>see also</u> <u>McFarland</u>, 512 U.S. at 856; <u>United States v. Thomas</u>, 221 F.3d 430, 437 (3d Cir. 2000) (habeas petition may be dismissed where "none of the grounds alleged in the petition would entitle [petitioner] to [habeas] relief").

The Supreme Court explained the pleading requirements under the Habeas Rules as follows:

> Under Rule 8(a), applicable to ordinary civil proceedings, a complaint need only provide "fair notice

19

of what the plaintiff's claim is, and the grounds upon which it rests." <u>Conley v. Gibson</u>, 355 U.S. 41, 47 (1957)[9].  Habeas Rule 2(c) is more demanding [than Rule 8, which – in comparison – poses a lenient pleading standard].  It provides that the petition must "specify all the grounds for relief available to the petitioner" and "state the facts supporting each ground."  <u>See</u> <u>also</u> Advisory Committee's note on subd. (c) of Habeas Corpus Rule 2, 28 U.S.C., p. 469 ("In the past, petitions have frequently contained mere conclusions of law, unsupported by any facts.  [But] it is the relationship of the facts to the claim asserted that is important . . . ."); Advisory Committee's Note on Habeas Corpus Rule 4, 28 U.S.C., p. 471 ("'[N]otice' pleading is not sufficient, for the petition is expected to state facts that point to a real possibility of constitutional error." (internal quotation marks omitted)) . . . .

<u>Mayle v. Felix</u>, 545 U.S. at 655 (2005).

Hence, an example of a valid § 2241 pleading would be a clear and concise statement asserting, for instance, that the petitioner was kept in custody from the point of his arrest, but – in violation of the petitioner's sentencing court's order – the

---

[9]  Recently, the Supreme Court clarified that the Rule 8 standard is materially steeper that the construction of Rule 8 provided in <u>Conley.</u>  <u>See</u> <u>Ashcroft v. Iqbal</u>, 129 S. Ct. 1937 (2009).  In <u>Iqbal</u>, the Court explained, citing <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544 (2007), that "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do,'" <u>Iqbal</u>, 129 S. Ct. at 1949-50 (quoting <u>Twombly</u>, 550 U.S. at 555), stressing that

a court . . . can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations.

<u>Id.</u> at 1950. Thus, to prevent a summary dismissal, civil complaints must now allege "sufficient factual matter" to show that a claim is facially plausible.  <u>See</u> <u>id.</u> at 1949-50; <u>see also</u> <u>Twombly</u>, 550 U.S. at 555, & n.3; <u>Fowler v. UPMC Shadyside</u>, 578 F.3d 203 (3d Cir. 2009).

petitioner's prison officials calculated his release date with undue exclusion of the months the petitioner spent in custody until his sentencing.  Alternatively, similar challenges could be made in the event the petitioner has a bona fide belief that he was wrongfully denied credit for the time he spent in confinement serving a concurrent sentence imposed by another tribunal, or that his loss of the good-conduct-time credit was unwarranted, etc.  In contrast, a claim that the prison officials are executing the petitioner's sentence wrongfully because that sentence was, ab initio, "illegally imposed" is not a challenge cognizable under Section 2241, since such challenge is nothing but an attack on the petitioner's conviction and/or sentence, and it must be raised under § 2255 in the sentencing court.  See e.g., Millhouse v. Grondolsky, Civ. No. 09-0312 (JBS) (D.N.J.) (March 31, 2009), aff'd 331 Fed. App'x 108, 2009 U.S. App. LEXIS 18404 (3d Cir. 2009) (affirming this Court's determination that there is no § 2241 jurisdiction over the inmate's claim that the Bureau of Prisons was holding him in illegal detention because his conviction was unconstitutional).  Consequently, Burpee-El's assertions that the M.D. Fla. lacked jurisdiction to adjudicate his criminal charges, or that Burpee-El's perception of his citizenship had any effect on the M.D. Fla.'s subject matter or in personam jurisdiction with regard to Burpee-El's conviction/sentence, or that Burpee-El's prosecutors/defense counsel obtained Burpee-El's plea/conviction/sentence in violation of Burpee-El's rights, or any

other similar claim would squarely fall outside this Court's
jurisdiction and will be dismissed accordingly.

### C.   Abuse of Writ and Prohibition Against Recreational Litigation

Burpee-El's litigation practices exercised in the M.D. Fla.
and Maryland, read in light of Burpee-El's current submission
demanding adjudication of his claims under a long superceded legal
prescript, invites a brief discussion of the umbrella issue of
recreational litigation.  A "recreational litigant" is the "one who
engages in litigation as sport and files numerous [pleadings] with
little regard for substantive law or court rules." Jones v. Warden
of the Stateville Correctional Ctr., 918 F. Supp. 1142, 1153 (N.D.
Ill. 1995) (noting that, "[w]hen confronted with [a] recreational
plaintiff, courts, to protect themselves and other litigants, have
enjoined the filing of further case without leave of court" and
citing In re Winslow, 17 F.3d 314 (10th Cir. 1994); In re Burnley,
988 F.2d 1 (4th Cir. 1992); and Mayfield v. Collins, 918 F.2d 560
(5th Cir. 1990)).

It is well within the broad scope of the All Writs Act, 28
U.S.C. § 1651(a), for a district court to issue an order
restricting the filing of meritless cases by a litigant whose
manifold complaints aim to subject defendants to unwarranted
harassment, and raise concern for maintaining order in the court's
dockets.  See e.g., In Re Oliver, 682 F.2d 443, 445 (3d Cir. 1982)
(citing Lacks v. Fahmi, 623 F.2d 254 (2d Cir. 1980) (per curiam);
Harrelson v. United States, 613 F.2d 114, 115 (5th Cir. 1980) (per

<u>curiam</u>); and <u>Clinton v. United States</u>, 297 F.2d 899, 901 (9th Cir.
1961), <u>cert.</u> <u>denied</u>, 369 U.S. 856 (1962)).

The Court of Appeals for the Third Circuit has instructed
that,

> [i]n appropriate circumstances, courts have gone beyond
> prohibitions against relitigation and enjoined persons
> from filing any further claims of any sort without the
> permission of the court.  In <u>Rudnicki v. McCormack</u>, 210
> F. Supp. 905 (D. Mass. 1962), the court entered such an
> injunction after it found that, in the absence of a
> court-ordered proscription, a plaintiff who had
> "repeatedly filed groundless actions" against various
> state and federal officers will continue to institute
> groundless and purely vexatious litigation both against
> these defendants and against other judges and public
> officials, the effect of which will be to cause further
> harassment of these officials, further expense to the
> governments which they represent, and further burden upon
> the offices of the clerks of the courts in which such
> proceedings are initiated.  <u>Id.</u> at 911.  <u>See</u> <u>also</u> <u>Gordon</u>
> <u>v. U.S. Department of Justice</u>, 558 F.2d 618 (1st Cir.
> 1977) (plaintiff enjoined from instituting suit against
> any state or federal judge, officer, or employee without
> permission of court); <u>Green v. Wyrick</u>, 428 F. Supp. 732
> (W.D. Mo. 1976).

<u>Oliver</u>, 682 F.2d at 445.

This Court, therefore, strongly urges Burpee-El to take his
litigation in this District (and in all other courts) with utmost
seriousness.  While this Court stands ready to address Burpee-El's
<u>bona</u> <u>fide</u> claims, and to grant relief if warranted, the Court will
not tolerate frivolous litigation that wastes judicial resources
and warns Burpee-El that any future abuse of legal process might
trigger sanctions including an imposition of severe limitations on
Burpee-El's ability to initiate such legal actions in the future.
<u>See</u> <u>Sanders v. United States</u>, 373 U.S. 1, 17-19 (1963) (explaining

that the concept of "abuse of the writ" is founded on the equitable nature of habeas corpus. . . . Where a prisoner files a petition raising grounds that were available but not relied upon in a prior petition, or engages in other conduct that disentitles him to the relief he seeks, the federal court may dismiss the subsequent petition on the ground that the prisoner has abused the writ") (emphasis supplied).

## III. CONCLUSION

For the foregoing reasons, Burpee-El's instant submission, as drafted, will be dismissed, without prejudice, for failure to comply with <u>habeas</u> pleading requirements. Burpee-El will be allowed one opportunity to submit a clear and concise § 2241 petition consistent with the above requirements. The deadline shall be the date that is thirty (30) days after the entry of this Order, or thirty (30) days after exhaustion of administrative remedies, whichever date is later. If no such filing is made within thirty (30) days of the entry of this Order, the dismissal shall be deemed to be with prejudice.[10]

---

[10] Furthermore, Petitioner's motion for default judgment (Docket Item 4) shall be denied. Respondent is not in default since the Court has not determined that any answer by Respondent is required nor has the Court set a deadline to do so. Moreover, the present Petition is legally frivolous and requires no answer, as explained above.

An appropriate Order accompanies this Opinion.


**s/ Jerome B. Simandle**
Jerome B. Simandle
United States District Judge


Dated:    **November 8, 2010**